IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY HALL, #K57675, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-01338-SMY |
| | ) |
| LATOYA HUGHES, | ) |
| JOHN BARWICK, III, | ) |
| MARGARET MADOLE, | ) |
| MICHAEL GARBER, | ) |
| MAJOR MARNATI, | ) |
| B. WALLA, | ) |
| UNKNOWN INTEL (I.A.), | ) |
| STEVEN J. REIEDELBERGER, | ) |
| and BRADLEY A. KIRKMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Timothy Hall, an inmate in the Illinois Department of Corrections (IDOC), filed this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from an allegedly retaliatory disciplinary ticket he received at Pinckneyville Correctional Center. (Doc. 1). He seeks money damages for alleged violations of his rights under the First, Fifth, Eighth, and Fourteenth Amendments and Illinois law. *Id*. The Complaint is subject to preliminary review under 28 U.S.C. § 1915A, which requires screening and dismissal of portions that are legally frivolous or malicious, fail to state a claim for relief, or request money damages from an immune defendant. *Id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-21): In September 2024, two internal affairs officers approached Plaintiff and explained that they were investigating the flow of illegal drugs into the prison. They requested his help rooting out culprits. When

1

Plaintiff responded that he knew nothing about drugs in the prison, the officers told him not to worry and said "they'd be seeing [him]." *Id*. at 19.  He thought nothing of it.  *Id*.

Later the same month, Officer Michael Garber issued Plaintiff a disciplinary ticket for drugs and/or drug paraphernalia.  During a tactical shakedown of his cell on September 19, 2024, officers found a black sheet of paper that was saturated with an unknown substance.  A field test of the paper yielded a preliminary positive result for the presence of fentanyl.  *Id*. at 19-20.  Plaintiff was taken to segregation in handcuffs.  *Id*.

Officer Garber, Major Marnati, B. Walla, and several intel officers subjected Plaintiff to unconstitutional conditions of confinement in segregation.  *Id*. at 8, 17, 19-20.  When he arrived, Plaintiff was held in the shower for 10 hours and denied drinking water.  Following a shift change, Plaintiff was processed into segregation and given soap, toothpaste, and a toothbrush, but was assigned to a cell that was doused with tear gas and caused him to cough and choke.  *Id*. at 17.  The cell was also covered in feces, blood, insects, and spiders.  *Id*. at 8.  He was given a metal bunk with no mattress, bedding, sheets, towels, cleaning supplies, or change of clothing.  The cell also had no electricity, leaving him in total darkness for the duration of his stay there.  *Id*.

Plaintiff received a disciplinary ticket for the alleged drugs and/or drug paraphernalia on September 24, 2024.  Before the disciplinary hearing, Major Marnati, B. Walla, and Internal Affairs officers met with Plaintiff and pressured him to admit being a drug dealer or disclose the names of inmates who were bringing fentanyl into the prison.  They threatened to contact the Perry County State's Attorney to have him charged with possession of fentanyl and to see about "putting some of those deaths by [f]entanyl on [Plaintiff]." *Id*. at 20.  Plaintiff knew nothing and said so.

Defendant Reiedelberger and Kirkman conducted a disciplinary hearing at his cell. Plaintiff's defense was that he knew nothing about fentanyl or the black sheet of paper found in

2

his cell. The officers found him guilty of violating Rule 203: Drugs & Drug Paraphernalia based on his failure to provide any exonerating evidence. They recommended punishment with 6 months in segregation, 3 months of revoked good conduct credit, 6 months of contact visit restrictions, 4 months of commissary restriction, and termination of his job assignment. *Id*. at 13.

Plaintiff vaguely describes a subsequent conversation that "was had" and led him to believe the ticket would be expunged after further testing confirmed no presence of fentanyl on the black sheet of paper. *Id*. at 17. The Final Summary Report noted a reduction in punishment to 14 days of segregation and termination of job assignment. *Id*. at 14. Bradley Kirkman signed the Final Summary Report with a note indicating "Recommended Action Reduced" on September 25, 2024, and John Barwick, III, signed on October 2, 2024. In a grievance, Plaintiff explained that he was released from segregation on October 3, 2024. *Id*. at 16-17. Nearly seven months later, the Administrative Review Board determined the findings were unsubstantiated and reduced the ticket to a violation of Rule 308: Contraband. *Id*. at 13, 21.

### **Preliminary Dismissals**

Latoya Hughes and Margaret Madole are named as defendants but not mentioned in the statement of claim. Merely invoking the name of a potential defendant is not enough to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, Defendants Hughes and Madole will be dismissed without prejudice.

"Unknown Intel (I.A.)" are also designated as defendants in the case caption and described as "several I.A. persons who threatened" Plaintiff. (Doc. 1, pp. 1, 4). They are referred to in various ways throughout the Complaint. Plaintiff's reference to these placeholder defendants does not support a claim against any single individual under § 1983. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect

specific defendants to illegal acts, and thus failed to adequately plead personal involvement required under § 1983). Defendants Unknown Intel (I.A.) will also be dismissed.

### Discussion

The Court designates the following claims in the *pro se* Complaint:

**Count 1:** Eighth Amendment claim against Garber, Marnati, and Walla for placing Plaintiff in Cell-61 of 5-House-B-Wing without cleaning supplies or electricity for 14 days from September 19, 2024 to October 3, 2024, when the cell was covered in tear gas, feces, blood, waste, spiders, and insects.

**Count 2:** First Amendment claim against Garber for issuing Plaintiff a retaliatory disciplinary ticket for drugs and drug paraphernalia on September 24, 2024, when he failed to provide information about drugs at the prison.

**Count 3:** Fifth Amendment claim against Marnati and Walla for threatening Plaintiff with criminal prosecution when he refused to admit responsibility for or knowledge of drugs at the prison on September 24, 2024.

**Count 4:** Fourteenth Amendment claim against Reiedelberger and Kirkman for recommending punishment for drugs and drug paraphernalia at a hearing on September 24, 2024, before reducing Plaintiff's actual punishment to 14 days of segregation for contraband and job termination on September 25, 2024, issuing a Final Summary Report signed by Barwick on October 2, 2024, and releasing him from segregation after 14 days on October 3, 2024.

**Count 5:** Illinois claim for intentional infliction of emotional distress against Defendants.

Any other claim mentioned in the Complaint but not addressed herein is dismissed without prejudice under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### Count 1

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to deny inmates "the minimal civilized measure of life's necessities," including adequate food, shelter, clothing, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim, a plaintiff must plead factual allegations suggesting that each defendant knew of and

disregarded a substantial risk of serious harm posed by the constitutionally objectionable living conditions. *Id*. at 847. Plaintiff alleges that Garber, Marnati, and Walla knowingly placed him in a segregation cell that was doused in tear gas and covered in feces, dried blood, food waste, spiders, and insects with no cleaning supplies or electricity for 14 days beginning on September 19, 2024. (Doc. 1, p. 8). These allegations are sufficient to state a colorable claim. Count 1 will proceed against Garber, Marnati, and Walla.

### Count 2

A First Amendment claim of retaliation requires a plaintiff to allege: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was a motivating factor in the decision to take the retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Plaintiff complains that Garber, Marnati, and Walla retaliated against him for denying knowledge of drugs at the prison by issuing him a disciplinary ticket on September 24, 2024. However, the allegations do not suggest that Plaintiff received a ticket for saying he knew nothing, but rather for the discovery of a piece of paper laced with suspected fentanyl in his cell. Count 2 will be dismissed without prejudice for failure to state a claim against the defendants.

### Count 3

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Section 1983 provides a right to recovery for violations of the Fifth Amendment only where there is "courtroom use of a criminal defendant's compelled self-incriminating testimony." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1027 (7th Cir. 2006).

The allegations articulate no claim here. Plaintiff alleges that he was pressured to make statements against himself and others, but he made no statements against anyone. Therefore, no statements were used against him or anyone else, in a courtroom or elsewhere. Count 3 will be dismissed without prejudice for failure to state a claim for relief against any defendant.

### Count 4

A Fourteenth Amendment due process challenge to prison disciplinary proceedings requires a plaintiff to show: (1) a constitutionally protected liberty interest; and (2) deficient procedures in connection with the deprivation of that interest. *Lisle v. Welborn*, 8933 F.3d 705, 720 (2019). The question is "whether a protected liberty interest exists, and if so, whether [Plaintiff] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

When considering whether disciplinary segregation gives rise to a protected liberty interest, courts consider "the 'combined import of the duration of the segregative confinement *and* the conditions endured." *Id*. at 965 (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). Plaintiff describes a short time spent in disciplinary segregation, *i.e.*, 14 days, where he encountered a dirty cell, no cleaning supplies, and no electricity. However, he discloses no injuries that he suffered as a result of these conditions or in combination with other conditions at the prison. Thus he fails to describe a protected liberty interest that was at stake.

Plaintiff also fails to describe any violations of his right to due process. Inmates facing disciplinary segregation are entitled to "informal, nonadversarial due process." *Ealy*, 109 F.4th at 965 (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)). This requires only "some notice" of the reasons for the inmate's placement in segregation, an opportunity to present his views, and a review by the decision maker of the charges and the available evidence. *Ealy*, 109

F.4th at 966 (citing *Adams*, 91 F.4th at 895). Plaintiff identifies no steps of this process that were deficient. Count 4 will be dismissed without prejudice for failure to state a claim.

### Count 5

The Court will exercise supplemental jurisdiction over the state law claim for intentional infliction of emotional distress because it arises from the same facts giving rise to his federal claims. 28 U.S.C. § 1367(a). A claim for intentional infliction of emotional distress arises under Illinois state law when: (1) defendants engage in extreme and outrageous conduct; (2) the defendants either intend to inflict severe emotional distress or know there is a high probability that their conduct will cause severe emotional distress; and (3) the defendants' conduct in fact causes severe emotional distress. *McGreal v. Village of Orland Park*, 850 F.3d 308 (7th Cir. 2017).

Plaintiff alleges the defendants caused him to suffer severe emotional distress, but he provides no information about the nature of his distress, symptoms he experienced, changes in symptoms over time, resulting diagnosis, and/or treatment recommendations. His conclusory allegations are not enough to state a colorable claim for intentional emotional distress. *See McGreal*, 850 F.3d at 314-15 (citations omitted) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."). Therefore, Count 5 will be dismissed without prejudice against all defendants.

### Disposition

The Complaint (Doc. 1) survives preliminary review under 28 U.S.C. § 1915A. **COUNT 1** will proceed against Defendants **GARBER, MARNATI,** and **WALLA**.

**ALL OTHER CLAIMS** and **DEFENDANTS** are **DISMISSED** without prejudice for failure to state a claim.

With respect to **COUNT 1**, the Clerk of Court shall prepare for Defendants **MICHAEL GARBER, MAJOR MARNATI**, and **B. WALLA**: (1) Form 5 (Notice of a Lawsuit and Request

to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE LATOYA HUGHES, JOHN**

**BARWICK, III, MARGARET MADOLE, I.A. OFFICERS JOHN DOE, STEVEN J. REIEDELBERGER, and BRADLEY A. KIRKMAN as defendants in CM/ECF.**

IT IS SO ORDERED.

DATED:  February 2, 2026

                                                s/ *Staci M. Yandle*
                                                Staci M. Yandle
                                                Chief U.S. District Judge

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint.  After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more.  When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.  **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**